UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MERISTEM CROP PERFORMANCE GROUP, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>SHAUN GUTHMILLER; MORTENSEN AG, LLC,<br><br>Defendants. | 4:26-CV-04175-ECS<br><br>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |

On September 18, 2026, Plaintiff, Meristem Crop Performance Group, LLC, moved for a temporary restraining order and preliminary injunction (Motion for TRO) against Defendant Shaun Guthmiller (Defendant Guthmiller) and Defendant Mortensen Ag, LLC (Defendant Mortensen Ag). Doc. 7. On September 29, 2026, the parties appeared through counsel at a motion hearing on the Motion for TRO. Doc. 23. Based on review of the file, record, and proceedings, this Court grants the Motion for TRO, in part, and denies the Motion for TRO, in part.

## I. Factual and Procedural Background

On September 17, 2026, Plaintiff filed its Verified Complaint for Injunctive Relief and Damages (Complaint). Doc. 1. Plaintiff is a limited liability company with a principal place of business in Ohio and is registered to conduct business in South Dakota. Id. ¶ 10. Plaintiff works in the crop input solutions industry that delivers "live, in-field biologicals through its patented BIO-CAPSULE™ Technology platform." Id. ¶ 17. Defendant Guthmiller was hired by Plaintiff

in November 2023 as a Sales Representative in South Dakota, where he signed two agreements: (1) a Non-Compete and Non-Solicit Agreement and (2) an Employment Agreement (collectively "November 2023 Agreements"). Id. ¶¶ 31, 33; see also Docs. 1-1, 1-2. The 2023 Non-Compete and Non-Solicit Agreement contained a non-disclosure restriction, a non-compete covenant, a non-solicitation provision, and a remedies provision that entitled Plaintiff to seek a TRO or permanent injunction upon a breach of agreement.[1] Doc. 1 ¶¶ 38–42; see also Doc. 1-1 at 7. The 2023 Employment Agreement contained provisions on restrictive covenants "to protect [Plaintiff] and the significant investment it made in [Defendant Guthmiller]," a trade secrets provision, and a non-disclosure covenant.[2] Doc. 1 ¶¶ 35–37.

Plaintiff claims it developed its trade secrets "at great expense and through substantial efforts," and misuse would cause "significant damage to [Plaintiff]." Id. at ¶¶ 25–26. During his employment, Defendant Guthmiller "had access to, regularly used, and was responsible for maintaining and safeguarding [Plaintiff's] trade secrets[.]" Id. ¶ 30. Defendant Guthmiller was terminated on August 19, 2026. Id. ¶ 90.

In the Complaint, Plaintiff alleges Defendant Guthmiller "engaged in an extensive scheme to enrich himself at his employer's expense by diverting payments intended for [Plaintiff] to himself, engaging in fraudulent sales, selling products on behalf of competitors while employed with [Plaintiff], and misappropriating [Plaintiff's] trade secrets." Id. ¶ 1. Plaintiff also alleges Defendant Guthmiller's actions were "aided and abetted" by Defendant Mortensen Ag. Id. ¶ 3.

---

[1] In the Complaint, among others, Plaintiff specifically cites to sections 1(c), 2(b)-(d), 5, and 15 of the 2023 Non-Compete and Non-Solicit Agreement. Doc. 1-1 at 1–7, 9.

[2] In the Complaint, among others, Plaintiff specifically cites to sections 2, 6, and 8 of the 2023 Employment Agreement. Doc. 1-2 at 1, 4–5.

On September 18, 2026, Plaintiff filed a motion for temporary restraining order and preliminary injunction, and supporting memorandum. Docs. 7, 8. Specifically, Plaintiff asks this Court for injunctive relief "(1) to enforce the terms of [Defendant] Guthmiller's Non-Compete and Non-Solicit Agreement and Employment Agreement; (2) to prevent the further use and disclosure of Plaintiff's trade secrets; (3) to order the immediate return of Plaintiff's trade secrets and other property; and (4) to ensure that [Defendant Guthmiller and Defendant Mortensen Ag] do not improperly benefit from their numerous acts of unfair competition." Doc. 7 at 1 (citation modified). Plaintiff sought an immediate TRO to be followed at a later date by a preliminary injunction hearing after expedited discovery.

Defendant Guthmiller filed his opposition to the Motion for TRO on September 24, 2026, Doc. 15, and supporting memorandum on September 28, 2026, Doc. 18, claiming he and Plaintiff signed another employment contract on July 1, 2025 (July 2025 Agreement) that superseded the November 2023 Agreements.[3] Doc. 15 at 1; Doc. 18. The July 2025 Agreement stated, in part, as follows:

> This letter sets forth the entire agreement between us and supersedes any prior agreements or understandings between us pertaining to the subject matter of this letter.

Doc. 15-1 at 2, 4; Doc. 19-1 at 2, 4.

In his supporting memorandum, Defendant Guthmiller conceded to injunctive relief on Plaintiff's trade secrets claim, requesting this Court to "set a deadline within fourteen days by which [Plaintiff] must retrieve its inventory and property from his property." Doc. 18 at 4, 18 (citation modified). On September 28, 2026, Defendant Mortensen Ag filed its joinder to

---

[3] Defendant Guthmiller filed a Declaration on September 28, 2026, where he attached written copies of the July 2025 Agreement. Docs. 19, 19-1. Defendant Guthmiller attached these same copies of the July 2025 Agreement on his opposition to the Motion for TRO. Doc. 15-1.

Defendant Guthmiller's oppositions to the Motion for TRO, asking this Court to "deny any injunctive relief against these Defendants" because Defendant Mortensen Ag is "solely owned" by one member and manager Daric Mortensen, and Defendant Mortensen Ag has "never employed or paid compensation to co-Defendant Guthmiller." Doc. 20 ¶¶ 1, 3, 4.

On September 28, 2026, Plaintiff filed its reply in support of its Motion for TRO, alleging the November 2023 Agreements were not superseded by the July 2025 Agreement. Doc. 22 at 1–8.

On September 29, 2026, a hearing was held on Plaintiff's Motion for TRO, where counsel for the parties presented their arguments before this Court. Doc. 23. At the conclusion of the hearing, this Court took the matter under advisement. Id.

## II. Legal Standard

Under Rule 65 of the Federal Rules of Civil Procedure, a district court has broad authority to issue a temporary restraining order. Entergy, Ark., Inc. v. Nebraska, 210 F.3d 887, 898 (8th Cir. 2000) (citation omitted). Rule 65 provides:

> (b) Temporary Restraining Order.
>
> > (1) *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> >
> > > (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> > >
> > > (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.
> >
> > (2) *Contents; Expiration.* Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry—not to exceed 14 days—that the court

> sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.
>
> (3) *Expediting the Preliminary-Injunction Hearing.* If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.
>
> (4) *Motion to Dissolve.* On 2 days' notice to the party who obtained the order without notice—or on shorter notice set by the court—the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.

Fed. R. Civ. P. 65(b). A TRO is an extraordinary equitable remedy, where the movant bears the burden of establishing its propriety. Giron Reyes v. Lyons, 801 F. Supp. 3d 797, 802 (N.D. Iowa 2025) (citations omitted).

In deciding whether to issue a TRO, the Court weighs four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). This Court will consider each factor here. See Kersten v. City of Mandan, 389 F. Supp. 3d 640, 645 (D.N.D. 2019) ("[I]t is well-established the court is required to consider the factors set forth in Dataphase Systems. Inc. . . . in determining whether a temporary restraining order should be granted."); Solomon v. Campbell, No. 18-cv-4001, 2018 WL 3085171, at *3 n.4 (W.D. Ark. June 22, 2018) ("The four Dataphase factors are also used to determine whether to issue a temporary restraining order."). "No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue." Turtle Island Foods, SPC v. Thompson, 992 F.3d 694, 699 (8th Cir. 2021) (citation omitted).

## III. Discussion

At the hearing, Plaintiff's counsel argued it was entitled to injunctive relief with respect to both its breach of contract claim and its misappropriation of Plaintiff's trade secrets claim against Defendant Guthmiller. Plaintiff clarified at the hearing it is not seeking to enforce the terms of the agreements at issue against Defendant Mortensen Ag. Instead, Plaintiff seeks injunctive relief against Defendant Guthmiller and "others acting in active concert with him." Mot. Hr'g for TRO 2:51:09–2:51:42 p.m., Sept. 29, 2026 (audio).

### A. Breach of Contract

#### 1. Likelihood of Success on the Merits

"While no single factor is determinative, the probability of success factor is the most significant." Home Instead, Inc. v. Florance, 721 F.3d 494, 497 (8th Cir. 2013) (citation modified). For this factor to weigh in a plaintiff's favor, the plaintiff need only show they have a "fair chance of prevailing." Lamplighter Vill. Apartments LLP v. City of St. Paul, 534 F. Supp. 3d 1029,1034 (D. Minn. 2021) (quoting Planned Parenthood of Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)). The movant need not demonstrate "a greater than fifty percent likelihood that [it] will prevail on the merits" for this factor to weigh in its favor. Rounds, 530 F.3d at 731 (quoting Dataphase Sys.,Inc., 640 F.2d at 113) (citation modified). "[W]here the balance of other factors tips decidedly toward plaintiff a [TRO] may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation." Dataphase Sys., Inc., 640 F.2d at 113.

The key issue at the hearing revolved around the final provision of the July 2025 Agreement. As noted above, this language reads as follows:

> This letter sets forth the entire agreement between us and *supersedes* any prior agreements or understandings between us pertaining to the subject matter of this letter.

Docs. 15-1 at 2, 4 (emphasis added); Doc. 19-1 at 2, 4.

Finding Plaintiff is likely to succeed on the merits of the breach of contract claim hinges on whether a valid non-compete agreement was in effect at the time Plaintiff filed its Motion for TRO. Defendant Guthmiller argues the July 2025 Agreement supersedes the November 2023 Agreements, and that no non-compete agreement is currently in effect. Doc. 15 at 1–2; see also Mot. Hr'g for TRO at 2:19:19–2:19:49 p.m. In response, Plaintiff offered two primary arguments in support of the claim that the November 2023 Agreements are still in effect.

First, Plaintiff argues that the clause at issue in the 2025 Agreement is a "merger clause" that limited the scope of the July 2025 Agreement and "anything that [ ] pertains to the subject matter of [the July 2025 Agreement]." Mot. Hr'g for TRO at 1:36:51–1:37:21 p.m. Plaintiff contends the language "[t]his letter sets forth the entire agreement between us" does not imply that the subject matter encompasses Defendant Guthmiller's entire employment with Plaintiff; rather, the subject matter of the July 2025 Agreement only encompasses his job duties and his compensation. Doc. 22 at 2–3 (quoting Doc. 15-1 at 4); see also Mot. Hr'g for TRO at 1:44:31–1:45:01 p.m.

To support this argument, Plaintiff cites Hot Stuff Foods, LLC v. Mean Gene's Enterprises, Inc., 468 F. Supp. 2d 1078 (D.S.D. 2006). Doc. 22 at 2–3. Hot Stuff Foods involved a Confidentiality and Noncompetition Agreement that was entered during the defendant's employment and a separate Separation Agreement that was entered at the conclusion

of the defendant's employment with the company. Hot Stuff Foods, LLC, 468 F. Supp. 2d at 1099–1100. The defendant argued the Separation Agreement contained language superseding the Confidentiality and Noncompetition Agreement.[4] Id. at 1100. The court disagreed, finding the subject matter of the Separation Agreement was limited to the severance pay to which there was no right to receive under the employment agreement. Id. at 1101. Thus, the court in Hot Stuff Foods found the noncompete provisions still in effect. Id. at 1103.

This Court finds Hot Stuff Foods is distinguishable from the case at bar. In Hot Stuff Foods, there was no contemplation of a continued agreement because the court concluded the provision in the Separation Agreement that indicated it superseded "all prior negotiations and all prior agreements" referred only to the "prior negotiations and prior agreements regarding the severance pay." Id. at 1101.

Unlike the Separation Agreement in Hot Stuff Foods, the July 2025 Agreement here encompasses Defendant Guthmiller's entire employment arrangement with Plaintiff. This Court finds the case at bar to be more analogous to Wilbur-Ellis Co., LLC v. Lacey, 4:23-CV-04097-LLP, 2023 WL 4423571, at *2 (D.S.D. July 10, 2023), aff'd, No. 23-2648, No. 23-2718, 2025 WL 366823 (8th Cir. Feb. 3, 2025) (per curiam). In Wilbur-Ellis, the contractual provision at issue was paragraph 25 of the Severance Agreement, which stated it "shall supersede all prior employment . . . agreements and understandings between the parties and sets forth the entire

---

[4] Section 2 of the Separation Agreement in Hot Stuff Foods stated, "This Agreement constitutes and contains the entire agreement and understanding concerning Employee's employment with Employer and separation thereof, and the subject matters addressed herein between the parties, and supersedes and replaces all prior negotiations and all prior agreements proposed or otherwise, whether written or oral, concerning the subject matter hereof." Hot Stuff Foods, LLC, 468 F. Supp. 2d at 1100.

understanding of the parties with respect to the subject matter hereof."[5] Id. at *2, 4. The district court ruled the first clause of paragraph 25 of the Severance Agreement that read, "This Agreement shall supersede all prior employment . . . agreements" indicated an "intent to supersede specifically [the defendant's] Employment Agreement with [the plaintiff]" and the second clause that read "sets forth the entire understanding of the parties with respect to the subject matter hereof" encompassed all aspects of the defendant's employment. Id. at *4.

Like the court's ruling in Wilbur-Ellis, this Court finds that the July 2025 Agreement demonstrates an intent to supersede the prior November 2023 Agreements. The second clause does not modify the first clause of the final provision of the July 2025 Agreement, which states "This letter sets forth the entire agreement between us" due to the word "and" between the first clause and the second clause. Docs. 15-1; 19-1; see also Wilbur-Ellis, 2023 WL 4423571, at *4 (noting the word "and" that separated the two clauses in paragraph 25 of the Severance Agreement). But even if it did, the subject matter of the July 2025 Agreement encompasses Defendant Guthmiller's entire employment arrangement with Plaintiff. Notably, by signing the July 2025 Agreement, Defendant Guthmiller transitioned from a three-year employment contract with guarantees to being an at-will employee. Docs. 1-1, 1-2; cf. Docs. 15-1, 19-1. This is a substantial and material change in the circumstances of Defendant Guthmiller's employment with Plaintiff. This Court finds the language of the July 2025 Agreement to be unambiguous. The subject matter of the July 2025 Agreement encompasses not just Defendant Guthmiller's job

---

[5] Paragraph 25 of the Severance Agreement provides:

> Entire Agreement. This Agreement shall supersede all prior employment, severance or separation agreements and understandings between the parties and sets forth the entire understanding of the parties with respect to the subject matter hereof. Notwithstanding the foregoing, Employee acknowledges and agrees that their obligations with respect to Confidential Information under the Handbook and any Confidentiality Agreements shall remain valid and enforceable following the execution of this Agreement [. . .]. Wilbur-Ellis, 2023 WL 4423571, at *2 (citation omitted).

duties and compensation, as Plaintiff claims, but also the scope of the protections Defendant Guthmiller has as an at-will employee.

Second, Plaintiff argues the 2023 Non-Compete and Non-Solicit Agreement and the 2023 Employment Agreement are "separate agreements" based on section 7 of the 2023 Employment Agreement, which states that the 2023 Non-Compete and Non-Solicit Agreement was separate and independent from the 2023 Employment Agreement.[6] At the hearing, Plaintiff conceded that the July 2025 Agreement may conflict with some provisions in the 2023 Employment Agreement, but acknowledged it was not trying to enforce the terms of the 2023 Employment Agreement. Mot. Hr'g for TRO at 2:47:00–2:47:43 p.m. Rather, Plaintiff is only trying to enforce the terms of the 2023 Non-Compete and Non-Solicit Agreement, which it believes stated explicitly that the November 2023 Agreements were to be interpreted separately. Id. The Court disagrees with Plaintiff's argument.

Under South Dakota law, two separate contracts are generally construed as one contract if they are "executed at the same time by the same parties, for the same purpose and as part of the same transaction[.]" See MetaBank v. Conduent Bus. Servs., LLC, 4:19-CV-04138-KES, 2020 WL 2065279, at *2 (D.S.D. Apr. 29, 2020) (citations omitted) ("All writings that are executed together as part of a single transaction are to be interpreted together.") (citation modified)); see

---

[6] Section 7 of the 2023 Employment Agreement reads in its entirety:

> **Non-Compete and Non-Solicit.** In consideration of the benefits received by Employee hereunder, Employee has, simultaneously with the execution hereof, executed a *separate* Non-Compete and Non-Solicit Agreement ("Non-Compete Agreement") with BRANDT, the Operating Company and Meristem AC, LLC of which the covenants on the part of Employee shall be construed as an agreement *independent* of any other provision of this Agreement; and the existence of any claim or cause of action of Employee against BRANDT, the Operating Company or Meristem AC, LLC, whether predicated on this Agreement or otherwise, shall not constitute a defense to enforcement by BRANDT, the Operating Company or Meristem AC, LLC of the covenants contained in said Non-Compete Agreement. Doc. 1-2 at 4 (emphasis added); see also Mot. Hr'g for TRO at 1:48:09–1:48:50 p.m.

also Doc. 18 at 9–10. The November 2023 Agreements satisfy the above criteria. Section 9 of the 2023 Non-Compete and Non-Solicit Agreement provides in its entirety:

> This Agreement, the Employment Agreement, and any other agreements referenced herein to be *executed simultaneously* with the execution of this Agreement (such other agreements being referenced hereinafter as "Ancillary Agreements"), contains all the understandings and representations between GUTHMILLER and the Meristem Group pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter, other than this Agreement, Employment Agreement, and the Ancillary Agreements relating to the subject matter hereof.

Doc. 1-1 at 8 (emphasis added). Similarly, Section 10 of the 2023 Non-Compete and Non-Solicit Agreement reads:

> No provision of this Agreement may be amended or modified unless the amendment or modification is agreed to in writing and signed by GUTHMILLER and the President of MAC. No waiver by either Party of any breach of any condition or provision of this Agreement to be performed by the other Party shall be deemed a waiver of any other provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by either Party in exercising any right, power, or privilege under this Agreement operate as a waiver to preclude any other or further exercise of any right, power, or privilege.

Doc. 1-1 at 8. The above provisions of the 2023 Non-Compete and Non-Solicit Agreement show that all of the November 2023 Agreements were intended to be read in conjunction with each other.

Plaintiff is in agreement with the "general proposition" that the November 2023 Agreements should be read together, but argues the November 2023 Agreements were intended to be read separately and independently from one another based on Section 7 of the 2023 Employment Agreement. Mot. Hr'g for TRO at 1:48:21–1:48:52 p.m. While Plaintiff is correct that South Dakota ascertains and gives effect to the intention of the parties in contractual interpretation, this argument does not persuade the Court. Doc. 22 at 3; see also Wilbur-Ellis Co., LLC v. Erikson, 103 F.4th 1352, 1356 (8th Cir. 2024) (When interpreting a contract in

South Dakota, the court "must give effect to the intention of the contracting parties." (citation omitted)). Because the restrictive covenants were left out of the July 2025 Agreement, this Court finds the parties did not intend the restrictive covenants to survive the July 2025 Agreement. The parties could have referenced the 2023 restrictive covenants or added new provisions. But they did not, and instead described the July 2025 Agreement as "the entire agreement between us . . ." Doc. 15-1 at 2, 4; Doc. 19-1 at 2, 4. Thus, the Court concludes the non-compete and non-solicitation provisions from 2023 to be unenforceable. See Wilbur-Ellis, 103 F.4th at 1357 (citations omitted) (stating "The parties could have included express language that would have extended the application of the Restrictive Covenants. They did not. As a result, the district court abused its discretion when issuing a preliminary injunction enforcing the Restrictive Covenants").

Therefore, it is unlikely that Plaintiff will succeed on the merits on the breach of contract claim.

**2. Irreparable Harm Absent Injunctive Relief**

Next, the Court weighs whether there was a "threat of irreparable harm to the movant." Dataphase Sys., Inc., 640 F.2d at 114. Irreparable harm exists "when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Cigna Corp. v. Bricker, 103 F.4th 1336, 1346 (8th Cir. 2024) (quoting Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009)).

Plaintiff argues it will suffer irreparable harm absent a TRO because Defendant Guthmiller breached the restrictive covenants as set forth in the November 2023 Agreements. Doc. 8 at 10–11; see also Mot. Hr'g for TRO at 1:52:27–1:52:41 p.m. Plaintiff contends it cannot be "made whole with money damages" because it would be "difficult to put a full number

on how much [Plaintiff] would lose" if Defendant Guthmiller is permitted to continue soliciting Plaintiff's clients and take business away from it. Mot. Hr'g for TRO at 1:54:21–1:54:51 p.m. As noted above, however, this Court has determined the November 2023 Agreements were superseded by the July 2025 Agreement. Thus, Plaintiff is not entitled to injunctive relief based on the non-compete and non-solicitation provisions found in the November 2023 Agreements.

For completeness, however, this Court will address the balance of the parties' arguments. With respect to Plaintiff's claims for breach of fiduciary duty of loyalty, tortious interference, civil theft, conversion, and civil conspiracy, Plaintiff has an adequate remedy at law. If this alleged conduct did occur, it has already happened, and injunctive relief would not be the proper remedy. Instead, Plaintiff can pursue a claim for damages. Doc. 18 at 12–13; see also CDI Energy Servs. v. W. River Pumps, Inc., 567 F.3d 398, 403 (8th Cir. 2009) (agreeing with the trial court that injunctive relief was unavailable where "[t]he harm that had already occurred could be remedied through damages") (citing Adam-Mellang v. Apartment Search, Inc., 96 F.3d 297, 300 (8th Cir. 1996)).

Because Plaintiff cannot seek injunctive relief through the non-compete and non-solicitation provisions found in the November 2023 Agreements, and because there is an adequate remedy at law for the remaining claims, the irreparable harm factor weighs in favor of Defendants.

### 3. Balance of Harm and Injury to Defendant

The balance of harm factor requires courts to balance the plaintiff's threat of irreparable harm against the injury that granting a TRO will inflict on the defendant. Dataphase Sys., Inc., 640 F.2d at 114. At base, this factor asks, "whether the balance of equities so favors the movant

that justice requires the court to intervene to preserve the status quo until the merits are determined." Id. at 113.

Here, Plaintiff is not entitled to a temporary restraining order against Defendant Guthmiller based on the November 2023 Agreements. Further, Plaintiff has an adequate remedy at law for its remaining claims against Defendant Guthmiller and Defendant Mortensen Ag. As a result, this factor weighs in Defendant's favor.

**4. Public Interest**

Finally, the Court must take the public's interest into account. Plaintiff argues it is in the public's interest to enforce valid contracts. Doc. 8 at 12; see also Copeland LP v. Thurston, 732 F. Supp. 3d 1003, 1013 (E.D. Mo. 2024) ("The public clearly has an interest in upholding valid contracts for which valuable consideration has been given and received."). This is certainly true, but legal remedies are available to Plaintiff for money damages. Hence, the public interest does not require issuance of a TRO at this time.

**B. Trade Secrets**

Plaintiff asks for injunctive relief against Defendant Guthmiller for alleged misappropriation of Plaintiff's trade secrets. Doc. 7 ¶ 3; Doc. 8 at 8–10. Defendant Guthmiller claims he had sent written notices to Plaintiff to retrieve its inventory that is stored in Defendant Guthmiller's barn that Plaintiff "refused" to do. Doc. 18 at 3–4. Defendant Guthmiller asks the Court to set a deadline of fourteen days for Plaintiff to pick up all the inventory from him. Id. at 4. Plaintiff did not object to this proposal at the hearing. Mot. Hr'g for TRO at 2:07:43–2:08:10 p.m.

With respect to Defendant Mortensen Ag, Plaintiff expressed it wants its inventory returned and an agreement from Defendant Mortensen Ag that it would not use Plaintiff's trade

secrets. Mot. Hr'g for TRO at 2:51:09–2:51:43 p.m. Mortensen Ag denies Plaintiff's allegations.

At the hearing, the parties agreed to resolve any trade secret issues for the time being by having the Court incorporate into an order the language in the last paragraph of Defendant Guthmiller's brief:

> [. . .] Guthmiller will *stipulate to the entry a temporary restraining order and preliminary injunction enjoining the use and disclosure of Meristem's trade secrets, as defined by South Dakota law, to the extent they exist and are identified as a trade secret by Meristem.* Guthmiller denies misappropriating any such trade secrets. Guthmiller will also *stipulate to the entry of a temporary restraining order and preliminary injunction requiring him to permit Meristem to come onto his property to retrieve its inventory and property.* Guthmiller requests that the Court set a deadline *within fourteen (14) days* by which Meristem must retrieve its inventory and property from his property.

Doc. 18 at 18 (emphasis added); see also Mot. Hr'g for TRO at 2:53:26–2:54:25 p.m. Because the parties agree to entry of a TRO and preliminary injunction against Defendant Guthmiller on the trade secret claims, this Court will not analyze the four Dataphase factors with respect to this issue. Instead, this Court will enter the order requested by the parties, as the Court believes it is appropriate. Hence, with respect to trade secrets, this Court grants a TRO and preliminary junction only against Defendant Guthmiller and others acting in concert with him, enjoining Defendant Guthmiller's use and disclosure of Plaintiff's trade secrets as defined under South Dakota law. This Court will not issue a TRO and preliminary injunction against Defendant Mortensen Ag, because it was not clear from the hearing whether Defendant Guthmiller was ever employed or compensated by Defendant Mortensen Ag. Mot. Hr'g for TRO at 1:57:00–1:59:00 p.m., 2:11:16–2:11:49 p.m., 2:38:03–2:39:38 p.m., 2:51:10–2:53:37 p.m. But the Court will order the requested injunctive relief against Defendant Guthmiller and those acting in concert with him to protect Plaintiff's trade secrets.

## IV. Conclusion

Based on the Verified Complaint and the record as it now exists, this Court finds that the balance of equities favors the movant, in part, that court intervention to preserve the status quo is necessary. Therefore, it is hereby

ORDERED that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, Doc. 7, is granted in part and denied in part. The Motion for Temporary Restraining Order and Preliminary Injunction is denied with respect to the breach of contract issue, and granted with respect to the misappropriation of trade secrets issue only as to Defendant Shaun Guthmiller. The Motion for Temporary Restraining Order and Preliminary Injunction is denied as to Defendant Mortensen Ag, LLC. It is further

ORDERED that a temporary restraining order and preliminary injunction are entered against Defendant Shaun Guthmiller and others acting in concert with him, enjoining the use and disclosure of Plaintiff's trade secrets as defined by South Dakota law to the extent these exist and are identified as a trade secret by Plaintiff. It is further

ORDERED that Plaintiff shall retrieve all its property and inventory from Defendant Shaun Guthmiller and Defendant Mortensen Ag, LLC within fourteen (14) days upon entry of this order. It is further

ORDERED that counsel for the parties confer with one another on the trade secrets issue, and should any issues remain with respect to the injunctive relief ordered by this Court, the parties shall contact this Court to set a hearing on any issues requiring court intervention.

DATED this 9th day of October, 2026.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE